ORTIZ & ORTIZ, L.L.P.                         **Hearing Date: April 23, 2015**
Martha de Jesus, Esq.                         **Hearing Time:  10:30 A.M.**
Norma E. Ortiz, Esq.
32-72 Steinway Street, Suite 402
Astoria, New York 11103
Tel. (718) 522-1117

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                        Case No. 14-44817

MARLON PERRY,
                                              Chapter 13

                         Debtor.
------------------------------------------------------x

### NOTICE OF HEARING ON DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 506(a)(1) AND FED. R. BANKR. PROC. 3012 FIXING THE VALUE OF REAL PROPERTY AND TO RECLASSIFY CLAIM NO. 5 OF THE MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL FROM SECURED TO UNSECURED NON-PRIORITY CLAIM

PLEASE TAKE NOTICE, that upon the annexed motion dated March 5, 2015 (the "Motion"), of Marlon Perry (the "Debtor"), the undersigned will move before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, in the United States Bankruptcy Court of 23rd day of April, 2015 (the "Hearing Date"), at 10:30 a.m., or as soon thereafter as counsel may be heard, for the entry of an order pursuant to Section 506 (a)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 3012 of the Federal Rules of Bankruptcy Procedure, fixing the value of real property and voiding the lien of Morgan Stanley Mortgage Loan Trust 2007-9SL, Mortgage Pass-Through Certificates, Series 2007-9SL, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee.  The Debtor may request such other and further relief as is just and equitable at the hearing.

PLEASE TAKE FURTHER NOTICE, that you need not appear at the aforesaid hearing if you do not object to the relief requested in the Motion.

PLEASE TAKE FURTHER NOTICE, that any response to the Motion must (a) be in writing and (b) must be filed with the Clerk of the Bankruptcy Court electronically at www.nyeb.uscourts.gov.  If you do not have the ability to file an objection electronically, the objection may be filed with the Clerk of the Court by presenting the Clerk with a copy of the objection saved on a diskette or compact disk in .pdf format by the date stated above.  A copy of the objection must be provided to (a) the Chambers of the Honorable Nancy Hershey Lord, and (b) Ortiz & Ortiz, LLP, 32-72 Steinway Street, Astoria, New York 11103, so as to be received no later than seven (7) days before the hearing.  The objection must comply with the Bankruptcy Rules and the Local Bankruptcy Rules of the court and must state with particularity the legal and factual bases for such objection.

Dated: March 5, 2015
      Astoria, New York

                                                             /s/Martha de Jesus
                                         Martha de Jesus, Esq.
                                         Norma E. Ortiz, Esq.
  ORTIZ & ORTIZ, L.L.P.
  32-72 Steinway Street, Suite 402
  Astoria, New York 11103
  Tel. (718) 522-1117
  Attorneys for the Debtor

ORTIZ & ORTIZ, L.L.P.
Martha de Jesus, Esq.
Norma E. Ortiz, Esq.
32-72 Steinway Street, Suite 402
Astoria, New York 11103
Tel. (718) 522-1117

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                                              Case No. 14-44817


MARLON PERRY,
                                                                   Chapter 13


                              Debtor.
-------------------------------------------------------x

## DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 506(a)(1)  AND FED. R. BANKR. PROC. 3012 TO FIX THE VALUE OF REAL PROPERTY AND TO RECLASSIFY CLAIM NO. 5 OF THE MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL FROM SECURED TO UNSECURED NON-PRIORITY CLAIM

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

        Marlon Perry (the "Debtor"), by his attorney Ortiz & Ortiz, L.L.P., respectfully

represents as follows:

### BACKGROUND

        1.        The Debtor filed a voluntary chapter 13 petition on September 24, 2014.  The last

date for filing proofs of claim in this case was January 27, 2015.

        2.        The Debtor holds title to the real property located at 1209 East 93rd Street,

Brooklyn, NY 11236 (the "Property").  The Property is listed in the City Register's records

under Block 8201 and Lot 124.

        3.        On December 6, 2006, the Debtor and his spouse bought the Property and

financed the purchase by obtaining two mortgages.  The lender of the first mortgage was

Alliance Mortgage Banking Corp. and the original amount was Five Hundred Four Thousand ($504,000) Dollars. See annexed copy of the first mortgage attached as Exhibit A. The lender of the second mortgage was also Alliance Mortgage Banking Corp. and the original amount was One Hundred Twenty Six Thousand ($126,000) Dollars. See annexed copy of the second mortgage attached as Exhibit B. Both mortgages were recorded by Mortgage Electronic Registration Systems, Inc. ("MERS") on January 3, 2007.

4.     On April 26, 2010, MERS assigned the first mortgage to U.S. Bank National Association, as successor Trustee to Bank of America, National Association, (successor by merger to LaSalle Bank National Association), as trustee for Morgan Stanley Loan Trust 2007-8XS (the "2007-8XS Mortgage Trust" or "First Mortgage"). See copy of recorded assignment to the 2007-8XS Mortgage Trust annexed as Exhibit C.

5.     On November 19, 2014, the 2007-8XS Mortgage Trust filed a proof of claim in the Debtor's case in the amount of $650,881.78[1]. See copy of the 2007-8XS Mortgage Trust's proof of claim annexed as Exhibit D.

6.     On October 15, 2014, MERS assigned the second mortgage to the Morgan Stanley Mortgage Loan Trust 2007-9SL, Mortgage Pass-Through Certificates, Series 2007-9SL, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as trustee, successor by merger to LaSalle Bank National Association, as trustee, c/o Specialized Loan Servicing, LLC (the "2007-9SL Mortgage Trust" or "Second Mortgage"). See copy of recorded assignment to the 2007-9SL Mortgage Trust annexed as Exhibit E.

---

[1] The motion is based upon the presumption that the 2007-8XS Mortgage Trust's lien is valid and the document filed in support of the proof of claim are accurate.

2

7.      On November 3, 2014, the 2007-9SL Mortgage Trust filed a proof of claim in the

Debtor's case in the amount of $99,810.52.  See copy of the 2007-9SL Mortgage Trust's proof of

claim annexed as Exhibit F.

8.      Prior to the commencement of the instant case, the Debtor obtained an appraisal

dated May 18, 2014, that valued the Property at Five Hundred Seventy Five Thousand

($575,000.00) Dollars (the "Appraisal") based upon the fair market conditions in the Debtor's

neighborhood.  See copy of the Appraisal annexed as Exhibit G.  Therefore, the value of the

property is less than the amount claimed by the First Mortgage of $650,881.78.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this motion.  The U.S. District Court referred to

this Court jurisdiction pursuant to 28 U.S.C. § 1334.  Moreover, this is a core proceeding arising

under 28 U.S.C. § 157.  Venue of this motion is proper pursuant to 28 U.S.C. § 1409.  The

statutory predicates for the relief requested include 11 U.S.C. §§ 105, 502 and 506 and Fed. R.

Bankr. Proc. 3012.

## RELIEF REQUESTED

10.      The Debtor requests that the Court enter an order fixing the value of the Property

at Five Hundred Seventy Five Thousand ($575,000.00) Dollars and reclassifying the claim of the

2007-9SL Mortgage Trust, or its assignee, since any claim it may hold against the Debtor is

wholly unsecured.

11.      Section 506(a) provides in relevant part that if a creditor has an allowed claim that

is secured by a lien on estate property, that creditor has a secured claim to the extent of the value

of the property; the remainder of its claim is deemed an unsecured claim.  Fed. R. Bankr. Proc.

3

3012 permits the Court to determine the value of a claim secured by a lien on property by motion of any party in interest.

12.     Therefore, in order to determine whether the claim of the 2007-9SL Mortgage Trust is unsecured, the Court must first determine the value of the Property pursuant to 11 U.S.C. § 506(a) and Fed. R. Bankr. Proc. 3012.  E.g., In re Pond, 252 F.3d 122, 126 (2d Cir. 2001) (stating it is correct to look to § 506(a) for a judicial valuation of the collateral to determine the status of a creditor's secured claim) (citations and quotations omitted); In re Bennett, 312 B.R. 843, 847 (Bankr. W.D.KY 2004) ("To determine the amount of the secured portion of a claim, the Court must value the property").

13.     The Debtor respectfully submits that the Court may rely on the Appraisal as a reliable and credible evidence of the fair market value of the Property.  He further submits that the use of fair market value is a fair and appropriate valuation method.  E.g, In re Richardson, 97 B.R. 161, 162 (Bankr. W.D.N.Y. 1989) ("Section 506(a) plainly directs the court when valuing claims to do so in recognition of and relation to the valuation's purpose.").  Unlike liquidation value, fair market value is presumably the most favorable form of valuation to the lien holders since it represents the value of the Property in an arm's-length sale.  Based upon the foregoing, the Debtor requests that the Court find that the value of the Property is Five Hundred Seventy Five Thousand ($575,000.00) Dollars.

14.     Section 506(d) provides in relevant part that to the extent that a lien secures a claim against a debtor that is not an allowed secured claim, such lien is void unless the claim was (a) disallowed only under section 502(b)(5) or 502(e) or (b) the claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim.   In the instant case, the

4

Debtor requests that the Court deem the Second Mortgage lien void because the 2007-9SL

Mortgage Trust's claim is wholly unsecured.

## NOTICE

15.     Notice of this motion was provided to the 2007-9SL Mortgage Trust, the U.S.

Trustee, and the Chapter 13 Trustee.  It is submitted that no other creditor or party need receive

notice of the instant motion as it does not affect their interests.

16.     No previous application for relief requested herein has been made to this or any

other court.

WHEREFORE, the Debtor respectfully requests entry of an order granting the relief

requested herein, and for any further relief deemed just.


Dated: March 5, 2015
       Astoria, New York

                                          _/s/Martha de Jesus_____
                                          Martha de Jesus, Esq.
                                          Norma E. Ortiz, Esq.
                                          ORTIZ & ORTIZ, L.L.P.
                                          32-72 Steinway Street, Suite 402
                                          Astoria, New York 11103
                                          Tel. (718) 522-1117
                                          Attorneys for the Debtor

5

# Exhibit A

*Condo* (handwritten)

*WJAY42061* (handwritten)

Mortgage Recording Tax:

After Recording Return To:
ALLIANCE MORTGAGE BANKING CORP
3601 HEMPSTEAD TURNPIKE
LEVITTOWN, NEW YORK 11756
Loan Number: 06-1841

*mt* (handwritten)
*10,932* (handwritten)

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

**MIN: 100038600000-12935-4**

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated  DECEMBER 6, 2006  , together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."**  MARLON PERRY AND ANTOINETTE MORGAN-PERRY

whose address is  1209 EAST 93RD STREET, BROOKLYN, NEW YORK 11236

sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

**(D) "Lender."**  ALLIANCE MORTGAGE BANKING CORP

will be called "Lender." Lender is a corporation or association which exists under the laws of

Lender's address is  3601 HEMPSTEAD TURNPIKE, LEVITTOWN, NEW YORK 11756

**(E) "Note."** The note signed by Borrower and dated  DECEMBER 6, 2006  , will be called the "Note." The Note shows that I owe Lender  FIVE HUNDRED FOUR THOUSAND AND 00/100
Dollars (U.S. $ 504,000.00       )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by  JANUARY 1, 2037     .

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

Section:              Block:                Lot(s)/Unit No(s).:

———————————————————————————————————————————————————————————————

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                          Page 1 of 16

**DocMagic** *eForms* 800-649-1362
**www.docmagic.com**

Ny3033.mzm

## Schedule A Description

Revised: 10/12/2006

Title Number **WSAT-4206K**                                                    Page    1

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of East 93rd Street, distant 352.00 feet 10 3/4 inches westerly from the corner formed by the intersection of the northerly side of East 93rd Street and the westerly side of Avenue J;

RUNNING THENCE westerly along the northerly side of East 93rd Street, 25.00 feet;

THENCE northerly parallel with Avenue J, 100.00 feet;

THENCE easterly parallel with East 93rd Street, 25.00 feet;

THENCE southerly and part of the distance through a party wall 100.00 feet to the northerly side of East 93rd Street to the point or place of BEGINNING.

SAID PREMISES IMPROVED BY A
ONE OR TWO FAMILY DWELLING
ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] |
| | PREPAYMENT RIDER TO SECURITY INST |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 2 of 16

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ny3033.mzm

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at                    1209 EAST 93RD STREET                    ,
[Street]

BROOKLYN                                              , New York    11236    .
[City, Town or Village]                                                    [Zip Code]

This Property is in          KINGS          County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: BLOCK 8201 LOT 134

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

    **1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

    Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

    **2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

    If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

    Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

    Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property,

---

or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7.  Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
**(a)  Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b)  Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.  Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9.  Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be

---

available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds,

---

Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

---

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made under this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the

Ny3033.mzm

manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and**

will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property  [check box as applicable].**

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
MARLON PERRY                    -Borrower

_____ (Seal)
ANTOINETTE MORGAN-PERRY  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:

_____

Witness:

_____

State of New York                    )
                                     ) ss.
County of   NASSAU                   )

On the    6    day of _____ , in the year 2008 , before me,
the undersigned, personally appeared / MARLON PERRY, ANTOINETTE MORGAN-PERRY

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
                        Notary Public State of New York

_____
                                 Print or Type Name

(Seal, if any)                    My commission expires:

Tax Map Information No.: BLOCK 8201 LOT 23

DOROTHEE PERRY
Notary Public, State of New York
No. 01PE_____
Qualified in _____ County
Commission Expires June 12, 20__

SEAL

# PREPAYMENT RIDER

Loan Number: 06-1841

Date: DECEMBER 6, 2006

Borrower(s): MARLON PERRY

THIS PREPAYMENT RIDER (the "Rider") is made this 6th    day of DECEMBER    ,
2006                        , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
ALLIANCE MORTGAGE BANKING CORP

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

1209 EAST 93RD STREET, BROOKLYN, NEW YORK 11236

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 4   . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase. If this Note provides for a variable interest rate or finance
charge, and the interest rate or finance charge at any time exceeds the legal limit under

which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within TWELVE          ( 12      ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX          ( 6      ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.


_____ (Seal)
MARLON PERRY                    -Borrower

_____ (Seal)
ANTONIETTE MORGAN-PERRY    -Borrower


_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower


_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower


MULTISTATE PREPAYMENT RIDER
6/03                          Page 2 of 2                  DocMagic *eForms* 800-649-1362
                                                           www.docmagic.com

# Exhibit B



Mortgage Recording Tax:

After Recording Return To:
ALLIANCE MORTGAGE BANKING CORP
3601 HEMPSTEAD TURNPIKE
LEVITTOWN, NEW YORK 11756
Loan Number: 06-1843

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

**MIN:** 100038600000-12936-2

## WORDS USED OFTEN IN THIS DOCUMENT

**(A)  "Mortgage."** This document, which is dated  DECEMBER 6, 2006                    , will be called
the "Mortgage."

**(B)  "Borrower."**  MARLON PERRY AND ANTOINETTE MORGAN-PERRY

whose address is 1209 EAST 93RD STREET, BROOKLYN, NEW YORK 11236

                                        sometimes will be called "Borrower"
and sometimes simply "I" or "me."

**(C)  "Lender."** ALLIANCE MORTGAGE BANKING CORP

will be called the "Lender."  Lender is a corporation or association which was formed and which exists under
the laws of                                        . Lender's address is
3601 HEMPSTEAD TURNPIKE, LEVITTOWN, NEW YORK 11756

**(D)  "Note."** The junior lien note signed by Borrower and dated DECEMBER 6, 2006, and extensions and
renewals of that note, will be called the "Note."  The Note shows that I owe Lender U.S. $ 126,000.00
plus interest, which I have promised to pay in full by JANUARY 1, 2037                    .

**(E)  "Property."** The property that is described below in the section titled "Description of the Property" will be
called the "Property."

**(F)  "MERS."** Mortgage Electronic Registration Systems, Inc. will be called "MERS."  MERS is a separate
corporation that is acting solely as a nominee for Lender [as defined in (C) above] and Lender's successors and
assigns, as the beneficiary of this Mortgage. MERS is a corporation which exists under the laws of Delaware. The
address and telephone number of MERS are P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  **FOR
PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

Section:                    Block:                    Lot(s)/Unit No(s).:

———————————————————————————————————————

NEW YORK-SECOND MORTGAGE-1/80                                    DocMagic *e*Forms 800-649-1362
Form 3833 - AS AMENDED FOR MERS                                    www.docmagic.com

THE PREMISES HEREIN IS OR
WILL BE IMPROVED BY A ONE
OR TWO FAMILY DWELLING ONLY.

Ny3833.mzm

## Schedule A Description

Revised:  10/12/2006
Title Number **WSAT-4206K**                                                    Page    1

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of East 93rd Street, distant 352.00 feet 10 3/4 inches westerly from the corner formed by the intersection of the northerly side of East 93rd Street and the westerly side of Avenue J;

RUNNING THENCE westerly along the northerly side of East 93rd Street, 25.00 feet;

THENCE northerly parallel with Avenue J, 100.00 feet;

THENCE easterly parallel with East 93rd Street, 25.00 feet;

THENCE southerly and part of the distance through a party wall 100.00 feet to the northerly side of East 93rd Street to the point or place of BEGINNING.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS, (solely as nominee for Lender and Lender's successors and assigns), subject to the terms of this Mortgage. I understand and agree that MERS holds only legal title to the interests granted by me in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), as the beneficiary of this Mortgage, has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, discharging this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I do not:

(A)   Pay all the amounts that I owe Lender as stated in the Note;

(B)   Pay, with interest, any amounts that Lender spends under this Mortgage to protect the value of the Property and Lender's rights in the Property; and

(C)   Keep all of my promises and agreements under this Mortgage.

With respect to the amounts that I owe under the Note and under this Mortgage, I waive the benefit of the right which is known as the "homestead exemption." A homestead exemption is a property owner's right to keep a portion of his property (usually up to a certain dollar amount) free from the claims of creditors. My waiver of this right means that the Lender may exercise all of its rights under this Mortgage as if I were not entitled, under law, to the benefits of a homestead exemption.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the following Property:

(A)   The property which is located at 1209 EAST 93RD STREET
                                                                                                    ,
                                                                 [Street]

BROOKLYN                                          NY 11236                                          .
         [City]                                      [State and Zip Code]

This Property is in                                          KINGS  County in the State of New York.
It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: BLOCK 8201 LOT 134

(B)   All buildings, structures and other improvements that are located on the property described in paragraph (A) of this section;

(C)   All rights in other property that I have as owner of the property described in paragraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the property";

(D)   All rights or royalties from the property described in paragraph (A) of this section; and

(E)   All of the property described in paragraphs (B) through (D) of this section that I acquire in the future, and all rights described in paragraphs (B) through (D) of this section that I acquire in the future.

Ny3833.mzm

It may be that I do not own the Property but am a tenant under a lease. In that case, the rights I am giving to Lender by this Mortgage are rights in my tenancy.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property other than claims and charges of record.

I give a general warranty of title to Lender. This means that I am fully responsible for any losses which Lender suffers because, as a result of something I have done someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**UNIFORM PROMISES.** I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay Principal and Interest under the Note and to Fulfill Other Payment Obligations.** I will promptly pay to Lender when due principal and interest under the Note and late charges as stated in the Note.

2. **Agreements about Monthly Payments for Taxes and Insurance.**

**(A) Borrower's Obligation to Make Monthly Payments to Lender for Taxes and Insurance.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender (i) unless Lender tells me, in writing, that I do not have to do so or (ii) unless the law requires otherwise. Also, I will not have to pay to Lender any amount for which I am already making monthly payments to the holder of any superior mortgage or deed of trust, if it is a savings or banking institution. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

The amount of each of my payments under this Paragraph 2 will be the sum of the following:

(i)   One-twelfth of the estimated yearly taxes, assessments (including condominium and planned unit development assessments, if any) and ground rents (if any) on the Property which under the law may be superior to this Mortgage; plus

(ii)  One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus

(iii) One-twelfth of the estimated yearly premium for mortgage insurance (if any).

Lender will determine from time to time my estimated yearly taxes, assessments, ground rents and insurance premiums based upon existing assessments and bills, and reasonable estimates of future assessments and bills. (Taxes, assessments, ground rents and insurance premiums will be called "taxes and insurance.")

The amounts that I pay to Lender for taxes and insurance under this Paragraph 2 will be called the "Funds." The Funds are additional protection for Lender in case I do not fulfill my obligations under the Note and under this Mortgage.

**(B) Lender's Obligations Concerning Borrower's Monthly Payments for Taxes and Insurance.**

Lender will keep the Funds in a savings or banking institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. If Lender is such an institution then Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay taxes and insurance. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds, and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds on deposit, for using the Funds to pay taxes and insurance, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Mortgage, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Mortgage, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (a) the amount of Funds which Lender is holding or keeping on deposit, plus (b) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of taxes and insurance, is greater than the amount necessary to pay the taxes and insurance when they are due.

If, when payments of taxes and insurance are due, Lender has not received enough Funds from me to make those payments, I will pay to Lender whatever additional amount is necessary to pay the taxes and insurance in full. I must pay that additional amount in one or more payments as Lender may require.

When I have paid all of the amounts due under the Note and under this Mortgage, Lender will promptly refund to me any Funds that are then being held or kept on deposit by Lender. If, under Paragraph 20 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding or has on deposit at that time to reduce the amount that I owe to Lender under the Note and under this Mortgage.

3.    **Application of Borrower's Payments.**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

(A)  First, to pay the amounts then due to Lender under Paragraph 2 above;

(B)  Next, to pay interest then due under the Note; and

(C)  Next, to pay principal then due under the Note.

4.    **Borrower's Obligation to Pay Prior Mortgages, Charges and Assessments and to Satisfy Claims Against the Property.** I will keep all promises that I have made in any superior mortgage or deed of trust, including my promises to make payments when due. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will see that any claim, demand or charge that is made against the Property because an obligation has not been fulfilled (known as a "lien") is promptly paid or satisfied if the lien may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property.

5.    **Borrower's Obligation to Obtain and to Keep Hazard Insurance on the Property.** I will obtain hazard insurance to cover all buildings, structures and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender.

I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and the form of all renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals, subject to the terms of any superior mortgage or deed of trust.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed, or if it is not mailed, on the date the notice is delivered.

6.    **Borrower's Obligation to Maintain the Property and to Fulfill Obligations in Lease and Condominium and Pud Documents.** I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will now allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If the Property is a unit in a condominium or in a planned unit development, I will fulfill all of my obligations under the declaration, by-laws, regulations and other documents that create or govern the condominium or the planned unit development.

---

NEW YORK-SECOND MORTGAGE-1/80
Form 3833 - AS AMENDED FOR MERS          Page 4 of 10          DocMagic *eForms* 800-649-1362
                                                               www.docmagic.com

Ny3833.mzm

**7.    Lender's Right to Take Action to Protect the Property.** If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 7 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. This Mortgage will protect Lender in case I do not keep this promise to pay those amounts with interest.

I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the same rate stated in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.

Although Lender may take action under this Paragraph 7, Lender does not have to do so.

**8.    Lender's Right to Inspect the Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. However, before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. That purpose must be related to Lender's rights in the Property.

**9.    Agreements about Condemnation of the Property.** A taking of property by any governmental authority by eminent domain is known as "condemnation". I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender, subject to the terms of any superior mortgage or deed of trust.

**10.    Borrower's Obligations to Pay Mortgage Insurance Premiums.** If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay premiums in the manner described in Paragraph 2 above.

**11.    Continuation of Borrower's Obligations.** Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Mortgage. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Mortgage.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Mortgage, even if Lender is requested to do so.

**12.    Continuation of Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 20 below, to demand that I make Immediate Payment In Full (see Paragraph 20 for a definition of this phrase) of the amount that I owe to Lender under the Note and under this Mortgage.

**13.    Lender's Ability to Enforce More than One of Lender's Rights.** Each of Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights, as well as any of Lender's other rights under the law, one at a time or all at once.

**14.    Obligations of Borrowers and of Persons Taking over Borrower's Rights or Obligations.** Subject to the terms of Paragraph 19 below, any person who takes over my rights or obligations under this Mortgage will have all of my rights and will be obligated to keep all of my promises and agreements made in this Mortgage. Similarly, any person who takes over Lender's rights or obligations under this Mortgage will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Mortgage. (In this Mortgage, the word "person" means any person, organization, governmental authority or any other party.)

NEW YORK-SECOND MORTGAGE-1/80
Form 3833 - AS AMENDED FOR MERS                    Page 5 of 10                    DocMagic *EForms* 800-649-1362
www.docmagic.com

Ny3833.mzm

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note and under this Mortgage. However, if one of us does not sign the Note, then: (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; and (B) that person is not personally obligated to make payments or to act under the Note or under this Mortgage. Any person signing this Mortgage but not signing the Note also agrees (i) that Lender may allow any other Borrower to delay or to change payments due under the Note or under this Mortgage and (ii) that Lender may make other accommodations under the Note or under this Mortgage. Lender may do this without obtaining anyone's consent and without modifying the effect of this Mortgage.

**15. Agreement about Giving Notices Required under this Mortgage.** Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it by certified mail addressed to me at the address stated in the section above titled "Description Of The Property." A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it by certified mail to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 15.

**16. Law That Governs this Mortgage.** The state and local law that applies in the place that the Property is located will govern this Mortgage. This will not limit Federal law that applies to this Mortgage. If any term of this Mortgage or of the Note conflicts with the law, all other terms of this Mortgage and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage and the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

As used in this Mortgage, the words "costs", "expenses" and "attorneys' fees" include all amounts not prohibited by applicable law or limited in this Mortgage.

**17. Borrower's Copy of the Note and of this Mortgage.** I will be given copies of the Note and of this Mortgage. Those copies must show that the original Note and Mortgage have been signed. I will be given those copies either when I sign the Note and this Mortgage or after this Mortgage has been recorded in the proper official records.

**18. Rehabilitation Loan Agreement.** I will comply with all of the terms and conditions of any home rehabilitation, improvement, repair, modernization, remodeling or similar loan agreement I have with Lender. If Lender requests it, I will sign and give to Lender an assignment of any rights or claims I might have against persons who supply labor, materials or services in connection with improving the Property. This assignment will be in a form acceptable to Lender.

**19. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require immediate payment in full of all sums secured by this Mortgage if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Mortgage.

If Lender requires immediate payment in full under this Paragraph 19, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Mortgage without giving me any further notice or demand for payment.

**NON-UNIFORM PROMISES.** I also promise and agree with Lender as follows:

**20. Lender's Rights If Borrower Fails to Keep Promises and Agreements. If all of the conditions stated in subparagraphs (A), (B), and (C) of this Paragraph 20 are satisfied, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Mortgage. Lender may**

do this without making any further demand for payment. This requirement will be called "Immediate Payment In Full."

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." If the proceeds of this sale are insufficient to repay Lender the amounts due to Lender from me under the Note and under this Mortgage, Lender may obtain a court judgment against me personally for the difference between all amounts due from me under the Note and this Mortgage and the sale proceeds. In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and expenses of the foreclosure and sale allowed by law.

Lender may require Immediate Payment In Full under this Paragraph 20 only if all of the following conditions are satisfied:

(A)    I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amounts that I owe to Lender under the Note and under this Mortgage; and

(B)    Lender gives to me, in the manner described in Paragraph 15 above, a notice that states:

    (i)    The promise or agreement that I failed to keep;

    (ii)    The action that I must take to correct that failure;

    (iii)    A date by which I must correct the failure. That date must be at least 10 days from the date on which the notice is mailed to me;

    (iv)    That if I do not correct the failure by the date stated in the notice, I will be in default and Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;

    (v)    That if I meet the conditions stated in Paragraph 21 below, I will have the right to have any lawsuit for foreclosure and sale discontinued and to have the Note and this Mortgage remain in full force and effect as if Immediate Payment In Full had never been required; and

    (vi)    That I have the right in any lawsuit for foreclosure and sale to argue that I did not fail to keep any of my promises or agreements under the Note or under this Mortgage, and to present any other defenses that I may have; and

(C)    I do not correct the failure stated in the notice from Lender by the date stated in that notice.

**21.    Borrower's Right to Have Lender's Lawsuit for Foreclosure and Sale Discontinued.** Even if Lender has required Immediate Payment In Full, I may have the right to have discontinued any lawsuit brought by Lender for foreclosure and sale or for other enforcement of this Mortgage. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A)    I pay to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and

(B)    I correct my failure to keep any of my other promises or agreements made in this Mortgage; and

(C)    I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and

(D)    I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and my obligations under the Note and under this Mortgage continue unchanged.

If all of the conditions in this Paragraph 21 are fulfilled, then the Note and this Mortgage will remain in full force and effect as if Immediate Payment In Full had never been required.

**22.    Lender's Rights to Rental Payments from the Property and to Take Possession of the Property.** As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. I have not given any of my rights to rental payments from the Property to anyone other than the holder of the Superior Mortgage, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under

this Paragraph 22, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to be a tenant on the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 22, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

23. **Lender's Obligation to Discharge this Mortgage When the Note and this Mortgage Are Paid in Full.** When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Mortgage, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or the work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 24.

25. **Borrower's Statement Regarding the Property  [Check Box as Applicable].**

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

26. **The following Riders are to be executed by Borrower.**  [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☒ 1-4 Family Rider  ☐ Biweekly Payment Rider

NEW YORK-SECOND MORTGAGE-1/80
Form 3833 - AS AMENDED FOR MERS          Page 8 of 10          DocMagic *EForms* 800-649-1362
www.docmagic.com

Ny3833.mzm

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any superior mortgage or deed of trust to notify Lender in writing, at Lender's address on page 1 of this Mortgage, if the Borrower is required to make "Immediate Payment In Full" and if there is "foreclosure and sale" under that superior mortgage or deed of trust.

**DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.**

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 9 of this Mortgage.

_____ (Seal)
MARLON PERRY                   -Borrower

_____ (Seal)
ANTOINETTE MORGAN-PERRY  -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness:

Witness:

_____

_____

NEW YORK-SECOND MORTGAGE-1/80
Form 3833 - AS AMENDED FOR MERS          Page 9 of 10          DocMagic *eForms* 800-649-1362
                                                              www.docmagic.com

Ny3833.mzm

State of New York            )
                                         ) ss.

County of  NASSAU            )

On the _6_ day of _____, in the year _____, before me, the undersigned, personally appeared MARLON PERRY, ANTOINETTE MORGAN-PERRY

,

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public State of New York

_____
Print or Type Name

(Seal, if any)                            My commission expires:

Tax Map Information No.: BLOCK 8201 LOT 23



SEAL

DocMagic eForms 800-649-1362
www.docmagic.com

Ny3833.mzm

Loan Number: 06-1843

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this  6th  day of  DECEMBER, 2006          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to    ALLIANCE MORTGAGE BANKING CORP

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1209 EAST 93RD STREET, BROOKLYN, NEW YORK 11236

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition
to the Property described in the Security Instrument, the following items are added to the Property
description, and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be
used in connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor
coverings now or hereafter attached to the Property, all of which, including replacements and additions
thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of
the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to
the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any
governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to
the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the
first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All
remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases
of the Property and all security deposits made in connection with leases of the Property. Upon the

---

DocMagic *e*Ⓕ*ⓞⓡⓜⓢ* 800-649-1362
www.docmagic.com

Us14.rdr

assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

MULTISTATE 1-4 FAMILY RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3170  9/90                          Page 2 of 3

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Us14.rdr

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
MARLON PERRY              -Borrower

_____ (Seal)
ANTOINETTE               -Borrower
MORGAN-PERRY

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

MULTISTATE 1-4 FAMILY RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3170  9/90                      Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Us14.rdr

# Exhibit C

## ASSIGNMENT OF MORTGAGE

Original Lender: **Mortgage Electronic Registration Systems, Inc., as nominee for Alliance Mortgage Banking Corp., its successors and assigns**

Know that,

**Mortgage Electronic Registration Systems, Inc., as nominee for Alliance Mortgage Banking Corp., its successors and assigns, 3300 SW 34th Ave., Suite 101 , Ocala, FL 34474**, assignor.

in consideration of the sum of One and No/100th Dollars and other good valuable consideration dollars, paid by

**US Bank National Association, as successor Trustee to Bank of America, National Association, (successor by merger to LaSalle Bank National Association) as Trustee for Morgan Stanley Loan Trust 2007-8XS, 180 East 5th Street , St. Paul, MN 55101**, assignee

hereby assigns unto the assignee, a certain mortgage made by MARLON PERRY and ANTOINETTE MORGAN-PERRY, given to secure payment of the sum of **Five hundred and four thousand dollars ($504,000.00)** and interest, dated **the 6th day of December, 2006**, recorded on **the 3rd day of January, 2007**, in the office of the Clerk of the County of Kings, in CRFN: 2007000003107 ,

covering premises 1209 EAST 93RD STREET, BROOKLYN, NY 11236, SBL #BLOCK 8201 LOT 124,

together with the Assignor's beneficial interest under the Mortgage, and the moneys due and to grow due thereon with the interest,

This said mortgage has not been otherwise assigned of record.

**TO HAVE AND TO HOLD** the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

**THIS** Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

**IN WITNESS WHEREOF,** the Assignor has caused these presents to be signed by its duly authorized officer this 26th day of April, 2010.

**IN PRESENCE OF**

Steven J. Baum, PC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

State of New York
County of Erie  ss:

Mortgage Electronic Registration Systems, Inc., as nominee for Alliance Mortgage Banking Corp., its successors and assigns,

BY: _____
Ronald W. Zackem
Assistant Secretary and Vice President

On the 26th day of April, in the year 2010 before me, the undersigned, a notary public in and for said state, personally appeared Ronald W. Zackem, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument .

_____, Notary Public

Jeanette Sheliga
Notary Public State of New York
Qualified in Niagara County
My Commission Expires July 27, 2013

**SEAL**

# Exhibit D

B 10 (Official Form 10) (4/13)

| UNITED STATES BANKRTUPCY COURT EASTERN DISTRICT OF NEW YORK | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor Marlon Perry | Case Number: 14-44817 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-8XS

**COURT USE ONLY**

Name and address where notices should be sent:
America's Servicing Company
Attn: BK Department
MAC#D3347-014
3476 Stateview Blvd
Fort Mill, SC 29715

Telephone number: 1-888-381-7953     email: pocnotifications@wellsfargo.com

Name and address where payment should be sent (if different from above):

America's Servicing Company
Attn: Bankruptcy Payment Processing
MAC# X2302-04C
One Home Campus
Des Moines, IA 50328

Telephone number: 1-888-381-7953     Email: pocnotifications@wellsfargo.com

☐ Check this box if this claim amends a previously filed claim

**Court Claim Number:** _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $650,881.78

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Mortgage Note
(see instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: XXXXXXX0037 | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): WFCMGA144817NYE29810037 (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:     $43,826.68

Nature of property or right of setoff: ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: 1209 East 93rd Street, Brooklyn, NY 11236

**Basis for perfection:** Recorded Mortgage

**Value of Property:** $

**Amount of Secured Claim:**     $650,881.78

**Amount of Unsecured Claim:**     $_____

Annual Interest Rate 2% ☐ Fixed  or  ☒ Variable
(when case was filed)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*), earned within 180 days before the case was filed or debtor's business ceased, whichever is earlier– 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(___).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 04/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (04/13)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor    ☐ I am the creditor's authorized agent    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Michael J. Chatwin

Title:    Attorney
Company:  Shapiro, DiCaro & Barak, LLC, Attorneys for Wells Fargo Bank, N.A.
dba America's Servicing Company as Servicer for U.S. Bank National Association,
as Trustee, successor in interest to Bank of America, National Association, as
Trustee, successor by merger to LaSalle Bank National Association, as Trustee for
Morgan Stanley Mortgage Loan Trust 2007-8XS

Address and telephone number if different from notice address above):

(Signature) _____ 11/19/14 (Date)

Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Boulevard Rochester, NY 14624
Fax: (585) 247-7380

Telephone number: (585) 247-9000        email: ROCBKCourt@LOGS.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

B 10A (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

If you filed a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3002.1

**Name of debtor:** Marlon Perry

**Case Number:** 14-44817

**Name of creditor:** U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-8XS

**Last four digits of any number you use to identify the debtor's account:** 0037

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. | Principal due (Interest Bearing) | | | | | | (1) | $517,431.98 |
| | Principal due (Non- Interest Bearing) | | | | | | | $105,704.49 |
| 2. | Interest Due | Interest rate | From | To | Amount | | | |
| | | 2% | 05/01/2013 | 09/24/2014 | $14,478.70 | | | |
| | | Total interest due as of the petition date | | | $14,478.70 | Copy total here ▶ | (2) | + $14,478.70 |
| 3. | Total principal and interest due | | | | | | (3) | $637,615.17 |

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| | Description | Dates incurred | | Amount |
|---|---|---|---|---|
| 1. | Late charges | 5/16/2013, 6/17/2013, 7/16/2013, 8/16/2013, 9/16/2013 | (1) | $157.56 |
| 2. | Non-sufficient funds (NSF) fees | | (2) | $0.00 |
| 3. | Attorney fees | 6/17/2014 | (3) | $2,450.00 |
| 4. | Filing fees and court costs | 4/22/2014 | (4) | $400.00 |
| 5. | Advertisement costs | | (5) | $0.00 |
| 6. | Sheriff/auctioneer fees | | (6) | $0.00 |
| 7. | Title Costs | | (7) | $0.00 |
| 8. | Recording fees | 4/22/2014 | (8) | $35.00 |
| 9. | Appraisal/broker's price opinion fees | | (9) | $0.00 |
| 10. | Property inspection fees | | (10) | $0.00 |
| 11. | Tax advances (non-escrow) | | (11) | $0.00 |
| 12. | Insurance advances (non-escrow) | | (12) | $0.00 |
| 13. | Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $3,303.74 |
| 14. | Property Preservation expenses. Specify: _____ | | (14) | $0.00 |
| 15. | Other. Specify: Bankruptcy Fees | | (15) | $0.00 |
| 16. | Other. Specify: Bankruptcy Costs | | (16) | $0.00 |
| 17. | Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (17) | $6,346.30 |

B 10A (Attachment A) (12/11)

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No.

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| **1. Installment payments due** | Date last payment received by creditor | | 6/11/2013 | | |
| | Number of installment payments due | (1) | 16 | | |
| **2. Amount of installment payments due** | 13 installments @ $2,340.03<br>June 1, 2013 - June 1, 2014 | | $30,420.39 | | |
| | 3 installments @ $2,353.33<br>July 1, 2014 - September 1, 2014 | + | $7,059.99 | | |
| | Total Installment payments due as of the petition date | | $37,480.38 | Copy total here ▶ (2) | $37,480.38 |
| **3. Calculation of cure amount** | Add total prepetition fees, expenses, and charges | | | Copy total from Part 2 here ▶ + | $6,346.30 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | | - | $0.00 |
| | Subtract amounts for which debtor is entitled to a refund | | | - | $0.00 |
| | Total amount necessary to cure default as of the petition date | | | (3) | $43,826.68 |
| | | | | | Copy total onto Item 4 of Proof of Claim form |
| **4. Escrow Advance included in Secured Claim Total** | | | | (4) | $10,224.05 |

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory Note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

**First Post Petition Payment due October 1, 2014 in amount of $2,360.77**

# Exhibit E

PREPARED BY AND RETURN TO:
M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd. # 100
Southlake, TX 76092                    **Assignment of Mortgage**                    Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
("MERS") AS NOMINEE FOR ALLIANCE MORTGAGE BANKING CORP ITS SUCCESSORS AND ASSIGNS P.O.
Box 2026, Flint, MI 48501-2026, 1901 E. Voorhees Street, Suite C, Danville, IL 61834 (Assignor)** by these presents does
assign, and set over, without recourse, to **MORGAN STANLEY MORTGAGE LOAN TRUST 2007-9SL, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-9SL, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE,
SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR
BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE c/o Specialized Loan Servicing, LLC,
8742 Lucent Blvd, Ste 300, Highlands Ranch, CO 80129 (Assignee)** the described mortgage with all interest, all liens, any
rights due or to become due thereon, executed by **MARLON PERRY AND ANTOINETTE MORGAN-PERRY** to
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR ALLIANCE MORTGAGE
BANKING CORP ITS SUCCESSORS AND ASSIGNS.    Said mortgage **Dated: 12/6/2006** is recorded in the **State of NY,
County of Kings on 1/3/2007, as CRFN # 2007000003108 AMOUNT: $ 126,000.00    *NO ASSIGNMENTS OF RECORD***
BLOCK 8201, LOT 124 Property Address: 1209 EAST 93RD STREET, BROOKLYN, NY 11236
This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an assignment within
the secondary mortgage market.
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.  Executed
on: October 15, 2014
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ALLIANCE MORTGAGE
BANKING CORP ITS SUCCESSORS AND ASSIGNS

By:

Robin Mathews, Assistant Secretary

PERRY   PAS  *13168552*

State of Texas, County of Tarrant
        On October 15, 2014, before me, the undersigned, personally appeared Robin Mathews, Assistant Secretary, personally
known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument, and that such individual made such appearance before the undersigned in the County of Tarrant, State of Texas.

Notary public, C. Lafferty
My commission expires: November 30, 2014

C. LAFFERTY
MY COMMISSION EXPIRES
November 30, 2014

SEAL

1006201639 MIN 100038600000129362 MERS Phone 888-679-6377
NY  Kings                                                    SLS/ASM/MSMC#323

# Exhibit F

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | FOR THE EASTERN DISTRICT OF NEW YORK BROOKLYN DIVISION | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
    Marlon Perry

**Case Number:**
    1-14-44817-NHL

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Morgan Stanley Mortgage Loan Trust 2007-9SL, Mortgage Pass-Through Certificates, Series 2007-9SL, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

**Name and address where notices should be sent:**
    Specialized Loan Servicing LLC
    8742 Lucent Blvd, Suite 300
    Highlands Ranch, Colorado 80129

    Telephone number: (800) 315-4757    email:

**Name and address where payment should be sent: (if different from above):**
    Specialized Loan Servicing LLC
    PO Box 636007
    Littleton, Colorado 80163

    Telephone number: (800) 315-4757    email:

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____

*(If Known)*

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $99,810.52

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**     Money Loaned
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** xxxxxx1639 | **3a. Debtor may have scheduled account as:** _____ (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** _____ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**     1209 East 93rd Street, Brooklyn, New York 11236

**Value of Property:** _____

**Annual Interest Rate:**   4.0000%   ☒ Fixed  or  ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

    $7,317.50

**Basis for perfection:**     Recordation of Lien

**Amount of Secured Claim:**     $99,810.52

**Amount Unsecured:** _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a) (__).

**Amount entitled to priority:**

_____

*Amounts are subject to adjustment on 04/01/2016 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit

agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature**: (See instruction #8)

Check the appropriate box.

☐ I am the creditor. ☒ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Andrew Kussmaul
Title: Authorized Agent for Specialized Loan Servicing LLC
Company: Buckley Madole, P.C.                                    /s/ Andrew Kussmaul
                                                                  (Signature)

Address and telephone number (if different from notice address above):
          P. O. Box 9013                                          11/03/2014
          Addison, TX 75001                                       (Date)

Telephone number:   (972) 643-6600                email:   POCInquiries@BuckleyMadole.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

B 10A (Attachment A) (12/11)

Chapter: 13

FOR THE EASTERN DISTRICT OF NEW YORK, BROOKLYN DIVISION

Judge: Nancy Hershey Lord    Trustee: Marianne DeRosa:

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | Marlon Perry | **Case number:** | 1-14-44817-NHL |
| **Name of creditor:** | Morgan Stanley Mortgage Loan Trust 2007-9SL, Mortgage Pass-Through Certificates, Series 2007-9SL, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee | **Last four digits** of any number you use to identify the debtor's account: | xxxxxx1639 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date (09/24/2014)

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on your Proof of Claim form).

1.  **Principal due** (1) **$95,175.10**

2.  **Interest due**

    | Interest rate | From | To | Amount |
    |---|---|---|---|
    | 4.000% | 07/01/2013 | 09/24/2014 | $4,614.58 |

    Total interest due as of the petition date $4,614.58    Copy total here   >   (2) + **$4,614.58**

3.  **Total principal and interest due** (3) **$99,789.68**

## Part 2: Statement of Pre-Petition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| | Description | Dates incurred | | Amount |
|---|---|---|---|---|
| 1. | Late Charges | 1 @ $20.84 incurred on 06/17/13 | (1) | $20.84 |
| 2. | Non-sufficient funds (NSF) fees | | (2) | |
| 3. | Attorney fees | | (3) | |
| 4. | Filing fees and court costs | | (4) | |
| 5. | Advertisement costs | | (5) | |
| 6. | Sheriff/auctioneer fees | | (6) | |
| 7. | Title costs | | (7) | |
| 8. | Recording fees | | (8) | |
| 9. | Appraisal/broker's price opinion fees | | (9) | |
| 10. | Property inspection fees | | (10) | |
| 11. | Tax advances (non-escrow) | | (11) | |
| 12. | Insurance advances (non-escrow) | | (12) | |
| 13. | Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | |
| 14. | Property preservation expenses. Specify: | | (14) | |
| 15. | Other. Specify: | | (15) | |
| 16. | Other. Specify: | | (16) | |
| 17. | Other. Specify: | | (17) | |
| 18. | **Total prepetition fees, expenses, and charges.** Add all of the amounts listed above. | | (18) | $20.84 |

B 10A (Attachment A) (12/11)

Chapter: 13

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☒ No

☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the **petition** date in a form consistent with applicable nonbankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | | 10/18/2013 | |
| | | Number of installment payments due: | (1) | <u>14</u> | |
| 2. | **Amount of installment payments due** | | | | |
| | | August 2013 to September 2014 | 14 installments @ $521.19 = | | $7,296.66 |
| | | **Total installment payments due as of the prepetition date** | <u>$7,296.66</u> | Copy total here  >  (2) | <u>$7,296.66</u> |
| 3. | **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | | Copy total here from Part 2  > | + <u>$20.84</u> |
| | | **Subtract** total of unapplied funds (funds received but not credited to account) | | | <u>$0.00</u> |
| | | **Subtract** amounts for which debtor is entitled to a refund | | | _____ |
| | | **Total amount necessary to cure default as of the petition date** | | (3) | <u>**$7,317.50**</u> |

Copy total onto Item 4 of Proof of Claim form

Your monthly payment amount may change due to an escrow requirement and/or interest rate adjustment.
Your current payment amount and any upcoming changes are provided below.

| Effective Date | Effective Amount |
|---|---|
| 10/01/2014 | $521.19 |

**Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.**

# Exhibit G

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.:

## SUBJECT

| | |
|---|---|
| Property Address: 1209 E 93rd St | City: Brooklyn     State: NY     Zip Code: 11236 |

County: Kings     Legal Description: Section : 2405 Block : 8201 Lot : 124

Assessor's Parcel #: 3082010124

Tax Year: 2013     R.E. Taxes: $ 6,584     Special Assessments: $ 0     Borrower (if applicable): n/a

Current Owner of Record: Antoinette Morgan Perry     Occupant: ☒ Owner  ☒ Tenant  ☐ Vacant     ☐ Manufactured Housing

Property Type: ☐ SFR  ☒ 2-4 Family     # of Units: 2     Ownership Restriction: ☒ None  ☐ PUD  ☐ Condo  ☐ Coop

Market Area Name: Canarsie     Map Reference: 0966.00     Census Tract: 35614     ☐ Flood Hazard

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach  ☐ Cost Approach  ☐ Income Approach  ☐ Other:

Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)

Intended Use:    FAIR MARKET VALUE FOR LEGAL PURPOSES

## ASSIGNMENT

Under USPAP Standards Rule 2-2(c), this is a Restricted Use Appraisal Report, and is intended only for the sole use of the named client. There are no other intended users. The client must clearly understand that the appraiser's opinions and conclusions may not be understood properly without additional information in the appraiser's work file.

Client: Marlon Perry     Address: 1209 E 93rd St, Brooklyn 11236

Appraiser: Vladimir Serpik     Address:

## SALES COMPARISON APPROACH

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address 1209 E 93rd St | | 9421 Avenue J | | 984 E 79th St | | 962 E 106th St | |
| | Brooklyn, NY 11236 | Brooklyn, NY 11236 | | Brooklyn, NY 11236 | | Brooklyn, NY 11236 | |
| Proximity to Subject | | 0.12 miles E | | 0.73 miles SW | | 0.66 miles NE | |
| Sale Price | $ | $ | 560,000 | $ | 565,000 | $ | 546,000 |
| Sale Price/GLA | $           /sq.ft. | $ 254.55 /sq.ft. | | $ 261.57 /sq.ft. | | $ 310.23 /sq.ft. | |
| Data Source(s) | | Geodata/Streasy | | Geodata/Propertyshark | | Geodata/Propertyshark | |
| Verification Source(s) | Interior Inspection | Geodata/Brooklyn Mls # 375395 | | Geodata/Brooklyn Mls # 369117 | | Geodata/Propertyshark/Closed | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | None Known | ArmLth | | ArmLth | | ArmLth | |
| Concessions | None Known | DOM:370 | | DOM:658 | | DOM:0 | |
| Date of Sale/Time | None Known | 01/30/2014 | | 02/24/2014 | | 04/09/2014 | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Average/Resident | 2 Way Street | +11,000 | Average/Resident | | Average/Resident | |
| Site | 2,500 sf | 2,937 sf | -2,000 | 1,800 sf | +3,500 | 1,800 sf | +3,500 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Brick/Sem-Detach | Part Brick/S-Det | +3,000 | Brick/Attached | +5,000 | Brick/Attached | +5,000 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Age | 9 | 49 | +4,000 | 54 | +4,500 | 54 | +4,500 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 10    6    4 | 10    6    2 | +20,000 | 10    6    2.5 | +15,000 | 8    4    2 | +20,000 |
| Gross Living Area | 2,040 sq.ft. | 2,200 sq.ft. | -9,600 | 2,160 sq.ft. | -7,200 | 1,760 sq.ft. | +16,800 |
| Basement & Finished | Full Basement | Full Basement | | Full Basement | | Full Basement | |
| Rooms Below Grade | Finished | Finished | | Finished | | Finished | |
| Functional Utility | 2 Fam/Average | 2 Fam/Average | | 2 Fam/Average | | 2 Fam/Average | |
| Heating/Cooling | Hot Water/Unit | Hot Water/Unit | | Hot Water/Unit | | Stem/Unit | 0 |
| Energy Efficient Items | Thermal Windows | Thermal Windows | | Thermal Windows | | Thermal Windows | |
| Garage/Carport | Driveway | 1 Car Garage | -10,000 | 2 Car Garage | -20,000 | Driveway | |
| Porch/Patio/Deck | Patio | Patio | | Balcony | 0 | Front Porch | 0 |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ +  ☐ - | $ 16,400 | ☒ +  ☐ - | $ 800 | ☒ +  ☐ - | $ 49,800 |
| Adjusted Sale Price of Comparables | | | $ 576,400 | | $ 565,800 | | $ 595,800 |

Summary of Sales Comparison Approach    The sales comparison approach is considered the best indication of value.

See addendum for additional details

GP RESTRICTED

Copyright© 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRTD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE     5/2010

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: _____

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): Geodata, Propertyshark, Acris

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: To the best of appraiser knowledge, the |
|---|---|
| Date: | subject has not been sold within past 3 years. Comp #3 was sold on 04/18/2013 for $198,000. All other |
| Price: | comparables have not been sold within the past 12 month. |
| Source(s): | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

## MARKET

Subject Market Area and Marketability: The subject residential market remains active and prices have been stabilizing and/or increasing. Mortgage rates are favorable and financing is readily available. Conventional financing remains most prevalent.

## SITE

| Site Area: 2,500 sf | Site View: Residential | Topography: Average | | Drainage: Public |
|---|---|---|---|---|

Zoning Classification: R4-1          Description: Residential

Zoning Compliance: ☒ Legal   ☐ Legal nonconforming (grandfathered)   ☐ Illegal   ☐ No zoning

Highest & Best Use: ☒ Present use, or ☐ Other use (explain) _____

Actual Use as of Effective Date: 2 Family          Use as appraised in this report: 2 Family

Opinion of Highest & Best Use: Present

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X          FEMA Map # 3604970219F          FEMA Map Date 09/05/2007

Site Comments: Site area is typical for subject neighborhood

## IMPROVEMENTS

Improvements Comments: SUBJECT IS IN OVERALL C3 CONDITION. SEE ADDENDUM FOR DETAILS

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 575,000

Indicated Value by: Cost Approach (if developed) $ _____          Indicated Value by: Income Approach (if developed) $ _____

Final Reconciliation Greatest emphasis in determining market value has been placed on the sales comparison approach which is most dependable in today's market and reflects the attitudes of buyers and sellers who trade such properties in this immediate area. After adjustments the most weight was placed on comp #3 due be the most recent and has least adjustments

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair: _____

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $ 575,000 , as of: 05/18/2014 , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACHMENTS

A true and complete copy of this report contains 13 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☐ Scope of Work   ☐ Limiting Cond./Certifications   ☐ Narrative Addendum   ☒ Photograph Addenda   ☒ Sketch Addendum
☒ Map Addenda   ☒ Additional Sales   ☐ Cost Addendum   ☐ Flood Addendum   ☐ Manuf. House Addendum
☐ Hypothetical Conditions   ☐ Extraordinary Assumptions   ☐ Extraordinary Assumptions

Client Contact: 347-631-6573          Client Name: Marlon Perry

E-Mail: marlonaperry@gmail.com          Address: 1209 E 93rd St, Brooklyn 11236

## SIGNATURES

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| | Supervisory or |
| Appraiser Name: Vladimir Serpik | Co-Appraiser Name: Ash Sarin |
| Company: Homeland Appraisals Inc | Company: Homeland Appraisals Inc |
| Phone: 718-545-1980   Fax: 718-785-9781 | Phone: 718-545-1980   Fax: 718-785-9781 |
| E-Mail: homelandappraisals@gmail.com | E-Mail: homelandappraisals@gmail.com |
| Date of Report (Signature): May 18, 2014 | Date of Report (Signature): 05/19/2014 |
| License or Certification #: 47000046581   State: NY | License or Certification #: 45000048263   State: NY |
| Designation: | Designation: |
| Expiration Date of License or Certification: 04/16/2016 | Expiration Date of License or Certification: 09/09/2015 |
| Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☒ None |
| Date of Inspection: 05/18/2014 | Date of Inspection: |

Copyright 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESTRICTED

Form GPRTD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE          5/2010

# ADDITIONAL COMPARABLE SALES

File No.:

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address 1209 E 93rd St | | 932 E 83rd St | | | | | |
| Brooklyn, NY 11236 | | Brooklyn, NY 11236 | | | | | |
| Proximity to Subject | | 0.52 miles SW | | | | | |
| Sale Price | $ | $ 600,000 | | $ | | $ | |
| Sale Price/GLA | $ /sq.ft. | $ 250.00 /sq.ft. | | $ /sq.ft. | | $ /sq.ft. | |
| Data Source(s) | Geodata/Streasy | Geodata/Propertyshark | | | | | |
| Verification Source(s) | Interior Inspection | Geodata/Propertyshark/Closed | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | None Known | ArmLth | | | | | |
| Concessions | None Known | DOM:N/A | | | | | |
| Date of Sale/Time | None Known | 10/25/2013 | | | | | |
| Rights Appraised | Fee Simple | Fee Simple | | | | | |
| Location | Average/Resident | Average/Resident | | | | | |
| Site | 2,500 sf | 2,000 sf | +2,500 | | | | |
| View | Residential | Residential | | | | | |
| Design (Style) | Brick/Sem-Detach | Brick/Attached | +5,000 | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Age | 9 | 54 | +4,500 | | | | |
| Condition | C3 | C3 | | | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 10 6 4 | 12 5 3 | +10,000 | | | | |
| Gross Living Area | 2,040 sq.ft. | 2,400 sq.ft. | -21,600 | sq.ft. | | sq.ft. | |
| Basement & Finished | Full Basement | Full Basement | | | | | |
| Rooms Below Grade | Finished | Finished | | | | | |
| Functional Utility | 2 Fam/Average | 2 Fam/Average | | | | | |
| Heating/Cooling | Hot Water/Unit | Hot Water/Unit | | | | | |
| Energy Efficient Items | Thermal Windows | Thermal Windows | | | | | |
| Garage/Carport | Driveway | 2 Car garage | -20,000 | | | | |
| Porch/Patio/Deck | Patio | Deck/Balcony | -4,000 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -23,600 | ☐ + ☐ - $ | | ☐ + ☐ - $ | |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | $ 576,400 | | $ | | $ | |

Summary of Sales Comparison Approach    Additional comparable is provided on the page to further support the value. Comps #4 is closed over 6 month and was provided to bracket high price end and further support the final value.

The sales comparison approach is considered the best indication of value.

*SALES COMPARISON APPROACH*

Copyright© 2010 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRTD.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    5/2010

## Supplemental Addendum

File No.

| Borrower/Client | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1209 E 93rd St | | | | | | |
| City | Brooklyn | County | Kings | State | NY | Zip Code | 11236 |
| Lender | | | | | | | |

**IMPROVEMENTS:**
THE SUBJECT IS A 2,040+/- SQUARE FOOT, SEMI-DETACHED, 2 FAMILY DWELLING BEING MAINTAINED IN OVERALL AVERAGE CONDITION. KITCHEN AND BATHROOM ARE WELL MAINTAINED AND FUNCTIONAL IN SEMI-MODERN CONDITION WITH STAINLESS KITCHEN APPLIANCES ON THE 1ST FLOOR. DWELLING HAS HARDWOOD FLOORS, 8.5'+/- CEILINGS, REAR PAVED PATIO AND SHED. FENCES HAVE NOMINAL VALUE. NO VALUE IS ADDED TO THE FENCE AND SHED. BOTH UNITS HAVE SIMILAR 3 BEDROOMS WITH 2 BATHROOMS LAYOUT. 1ST FLOOR UNIT HAS UPDATED FINISH FLOOR AND KITCHEN AND WAS PURCHASED AND INSTALLED AT THE OWNER'S REQUEST AT THE TIME OF INITIAL CLOSING. SUBJECT HAS 2 BOILERS AND 2 WATER HEATERS.

SUBJECT HAS FULL FINISHED BASEMENT WITH FULL INTERIOR AND EXTERIOR ACCESS AND ADDITIONAL BATHROOM.

NO EXTERNAL INADEQUACIES NOTED.

THE SUBJECT IS PHYSICALLY & FUNCTIONALLY ADEQUATE. ALL SYSTEMS AND UTILITIES **WERE ON,** IN WORKING CONDITION AND FUNCTIONAL AT THE TIME OF INSPECTION.

THE UNIT IS CURRENTLY FULLY FUNCTIONAL AND HABITABLE, AND THEREFORE, THIS APPRAISAL IS COMPLETED "AS IS".

## *APPRAISER DID NOT INSPECT SUBJECT PROPERTY WITHIN PAST 3 YEARS*

**ADJUSTMENTS AS FOLLOW:**
THE APPRAISER UTILIZED ALL AVAILABLE SOURCES INCLUDING GEODATA, PROPERTYSHARK, STREETEASY  AS A SALES AND LISTING SEARCH, GOING BACK **6 MONTH**, AND **ONE** MILE AWAY FROM THE SUBJECT PROPERTY, THE SALES WERE NARROWED DOWN, BASED ON CONDITION, GLA AND ROOM COUNT, APPRAISER ALSO TRIED TO FIND SALES THAT SOLD WITHIN THE PAST 6 MONTHS. ALL COMPS ARE CLOSED WITHIN PAST 6 MONTH EXCEPT COMP #4

GLA ADJUSTMENT @ 60 PER SQ.FT. FOR OVER 100 SQ.FT IN DIFFERENCE.
SITE ADJUSTMENTS WERE APPLIED AT THE RATE OF $5.00 PER SQ.FT FOR OVER 400 SF IN DIFFERENCE

ADJUSTED $3,000 FOR PARTIAL BRICK SIDING

ADJUSTED $5,000 FOR 1 CAR GARAGE

ADJUSTED $5,000 FOR 0.5 BATHROOM
ADJUSTED $10,000 FOR FULL BATHROOM

ADJUSTED $5,000 FOR ATTACHED CONSTRUCTION

AS NOTED ABOVE, THE SUBJECT IS IN OVERALL **AVERAGE** CONDITION. ADJUSTMENTS HAVE BEEN APPLIED TO THE COMPARABLES TO REFLECT THE RESPECTIVE DIFFERENCES IN RENOVATIONS OFFERED.

DUE TO EXTREME LACK OF SIMILAR SIZE, **AGE** AND LAYOUT COMPS WITH 4 BATHROOMS WITHIN THE SUBJECT NEIGHBORHOOD APPRAISER WAS OBLIQUE TO UTILIZE LESS THAN IDEAL **INFERIOR AGE COMPS WITH VARIES BATHROOMS** COUNT AND THUS MAKE AN ACROSS ADJUSTMENTS

LOCATION ADJUSTMENT IS DUE TO COMP #1 LOCATION ON 2 WAY STREET AND ACROSS PLAY GROUND. 2% INFERIOR STREET LOCATION IS WARRANTED

COMPS GLA AND LOT SIZES ARE PROVIDED BY GEODATA AND/OR MLS AND/OR PROPERTYSHARK AND/OR CALCULATED FROM DIMENSIONS PROVIDED ON ABOVE SITES

ALL ADJUSTMENTS ARE ROUNDED TO NEAREST $100 AND/OR $500

ADJUSTED AGE AT $100 PER YEAR FOR OVER 25 YRS IN DIFFERENCE

APPRAISER IS UNDER EXTRAORDINARY ASSUMPTION THAT 3RD COMP'S GARAGE WAS CONVERTED TO HEATED LIVING AREA DUE TO CERTIFICATE OF OCCUPANCY STATED THAT THERE IS 1 CAR GARAGE ON GROUND FLOOR AND AS PER EXTERIOR INSPECTION THERE WAS NO GARAGE AND BRICK WALL WITH DOOR BUILT. CONVERTED GARAGE'S GLA IS ADDED TO TOTAL BUILDING GLA IN ACCORDANCE WITH TOTAL COMP GLA PROVIDED BY PUBLIC RECORD PROVIDERS.

**DIGITAL SIGNATURE:**
THIS REPORT HAS BEEN ELECTRONICALLY PREPARED AND TRANSMITTED TO THE CLIENT IN COMPLIANCE WITH THE USPAP GUIDELINES WHICH INCLUDES VERIFICATION OF THE COMPLETE FILE TRANSFER AND DELIVERY. DIGITALLY PROTECTED SIGNATURE(S) HAVE BEEN USED IN THIS REPORT AND ADEQUATE SECURITY MEASURES ARE IN PLACE TO PROTECT THE DATE TRANSMITTED BY THE APPRAISER.

THE USE OF DIGITAL SIGNATURES ARE COMMONLY USED AND ARE ACCEPTED BY FANNIE MAE, FREDDIE MAC & HUD.

## Subject Photo Page

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | n/a | | | | |
| Property Address | 1209 E 93rd St | | | | |
| City | Brooklyn | County Kings | State NY | Zip Code 11236 | |
| Lender | | | | | |



**SUBJECT FRONT**

1209 E 93rd St
Sales Price
Gross Living Area  2,040
Total Rooms  10
Total Bedrooms  6
Total Bathrooms  4
Location  Average/Resident
View  Residential
Site  2,500 sf
Quality  Q4
Age  9



**SUBJECT REAR**



**SUBJECT STREET**

## Interior Photos

| | | |
|---|---|---|
| Borrower/Client | n/a | |
| Property Address | 1209 E 93rd St | |
| City | Brooklyn | County Kings |
| Lender | | |

State  NY     Zip Code  11236



2nd fl living room



same kitchen as above

2nd fl kitchen



2nd fl bedroom



2nd fl bedroom



2nd fl bathroom

## Interior Photos

| Borrower/Client | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 1209 E 93rd St | | | | |
| City | Brooklyn | County Kings | | State NY | Zip Code 11236 |
| Lender | | | | | |



2nd fl bathroom



2nd fl bedroom



1st fl living room



1st fl kitchen



same 1st fl kitchen



1st fl bedroom

## Interior Photos

| Borrower/Client | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 1209 E 93rd St | | | | |
| City | Brooklyn | County Kings | | State NY | Zip Code 11236 |
| Lender | | | | | |


1st fl bathroom


1st fl bedroom


utility


utility


basement rec room

1st fl bathroom

## Interior Photos

| Borrower/Client | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 1209 E 93rd St | | | | |
| City | Brooklyn | County | Kings | State NY | Zip Code 11236 |
| Lender | | | | | |



basement bathroom



same basement bathroom



rear shed



patio



rear additional

# Comparables photo page

| Borrower/Client | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 1209 E 93rd St | | | | |
| City | Brooklyn | County Kings | State NY | Zip Code 11236 | |
| Lender | | | | | |



### Comparable 1
9421 Avenue J
| | |
|---|---|
| Prox. to Subject | 0.12 miles E |
| Sale Price | 560,000 |
| Gross Living Area | 2,200 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 2 |
| Location | 2 Way Street |
| View | Residential |
| Site | 2,937 sf |
| Quality | Q4 |
| Age | 49 |



### Comparable 2
984 E 79th St
| | |
|---|---|
| Prox. to Subject | 0.73 miles SW |
| Sale Price | 565,000 |
| Gross Living Area | 2,160 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 2.5 |
| Location | Average/Resident |
| View | Residential |
| Site | 1,800 sf |
| Quality | Q4 |
| Age | 54 |



### Comparable 3
962 E 106th St
| | |
|---|---|
| Prox. to Subject | 0.66 miles NE |
| Sale Price | 546,000 |
| Gross Living Area | 1,760 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Average/Resident |
| View | Residential |
| Site | 1,800 sf |
| Quality | Q4 |
| Age | 54 |

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | n/a |
| Property Address | 1209 E 93rd St |
| City | Brooklyn    County  Kings    State  NY    Zip Code  11236 |
| Lender | |



### Comparable 4

932 E 83rd St
| | |
|---|---|
| Prox. to Subject | 0.52 miles SW |
| Sales Price | 600,000 |
| Gross Living Area | 2,400 |
| Total Rooms | 12 |
| Total Bedrooms | 5 |
| Total Bathrooms | 3 |
| Location | Average/Resident |
| View | Residential |
| Site | 2,000 sf |
| Quality | Q4 |
| Age | 54 |

### Comparable 5

Prox. to Subject
Sales Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

### Comparable 6

Prox. to Subject
Sales Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

## Building Sketch

| Borrower/Client | n/a | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1209 E 93rd St | | | | | |
| City | Brooklyn | County | Kings | State | NY | Zip Code 11236 |
| Lender | | | | | | |



| Area Calculations Summary | | | |
|---|---|---|---|
| **Living Area** | | **Calculation Details** | |
| First Floor | 1020 Sq ft | | 60 × 17 = 1020 |
| Second Floor | 1020 Sq ft | | 60 × 17 = 1020 |
| **Total Living Area (Rounded):** | **2040 Sq ft** | | |
| **Non-living Area** | | | |
| Basement | 1020 Sq ft | | 60 × 17 = 1020 |

TOTAL Sketch by a la mode, inc.

# Location Map

| Borrower/Client | n/a | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1209 E 93rd St | | | | | |
| City | Brooklyn | County | Kings | State | NY | Zip Code 11236 |
| Lender | | | | | | |

